**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Kroll Ontrack, Inc.,                                    Civil No. 08-1779 (DWF/FLN)

         Plaintiff,

v.                                              **MEMORANDUM**
                                              **OPINION AND ORDER**

Dr. Peter G. Grain and
Dr. Annette Barnes,

         Defendants.

---

Bradley M. Orschel, Esq., and Jonathan S. Parritz, Esq., Maslon Edelman Borman & Brand, LLP, counsel for Plaintiff.

Craig P. Miller, Esq., and Jeremy L. Johnson, Esq., Gray Plant Mooty Mooty & Bennett, PA, counsel for Defendants.

---

**INTRODUCTION**

This matter is before the Court on a motion to dismiss or transfer brought by Defendants Dr. Peter G. Grain and Dr. Annette Barnes ("Defendants") on the basis that this Court lacks jurisdiction over them. Plaintiff Kroll Ontrack, Inc. ("Kroll"), opposes the motion. For the reasons set forth below, the Court grants the motion and dismisses this case.

**BACKGROUND**

Defendants are husband and wife physicians practicing medicine in Michigan. In 2003, Defendants sued Mercy Health Services, Inc., doing business as Mercy

Hospital-Port Huron, Trinity Health, Mary Trimmer and Dr. Mahmoud Chafty (together "Trinity") in the United States District Court for the Eastern District of Michigan (the "Michigan lawsuit"), in a case styled as *Dr. Grain v. Trinity Health*, File No. 03-cv-72486 (E.D. Mich. Hon. Patrick Dugan).  In 2004, the court ordered that some of the claims presented be submitted to arbitration; the Defendants then filed an arbitration case in Michigan, titled *In the Matter of Arbitration between Peter G. Grain, M.D., and Annette Barnes, M.D. v. Mercy Health Services, Inc. d/b/a Mercy Hospital-Port Huron, Trinity Health, Mary Trimmer and Mahmoud Chafty, M.C.*, AAA Case File No. 54 180 01504 04 (the "Michigan arbitration").

On June 30, 2005, the panel granted the Defendants' motion to compel discovery of electronic data held by Trinity.  (Doc. No. 16 ¶ 4, Ex. A at 1-2.)  The panel ordered that Trinity retain Kroll, an electronic discovery firm headquartered in Eden Prairie, Minnesota, to conduct a search of certain computer tapes at Defendants' expense.  (*Id*. ¶ 2, ¶ 4, Ex. A at 2.)  Defendants were ordered to pay "in accordance with Kroll's payment terms."  (*Id*.)  Defendants were given the authority to terminate or limit the search.  (*Id*.)  On July 20, 2005, the arbitration panel issued a clarifying order, which stated that "[Defendants] are prohibited from communicating directly with Kroll," and ordering that communications be filtered through Trinity.  (Doc. No. 11 ¶ 7, Ex. B at 2.)

Counsel for Trinity, the law firm of Miller, Canfield, Paddock & Stone, P.L.C. ("Miller Canfield"), contacted Kroll and obtained an estimate of approximately $24,000 to $42,500 for the search work to be performed.  (Doc. No. 16 ¶ 4, ¶ 6, Ex. B.)  The parties negotiated for additional search terms for Kroll to use during the searches, and

Kroll provided a revised estimate for the work to be performed of between approximately $52,000 and $81,000.  (*Id*. ¶ 7, Ex. D.)

The parties agreed that Miller Canfield would enter into Kroll's contract, called a Statement of Work ("SOW"), and that Kroll would invoice Miller Canfield, which would in turn send the invoices to Defendants' counsel for payment by Defendants on net 30-day payment terms.  (*Id*. ¶¶ 9-10, Exs. F-G.)  Miller Canfield signed the SOW on July 25, 2005.  The SOW lists Miller Canfield as the customer.  (*Id*. at ¶ 11, Ex. H.)  An attachment to the SOW entitled "Service Agreement," states that the "parties agree that this Agreement shall be construed and the relations of the parties shall be determined in accordance with the laws of the state of Minnesota," and that the "place of adoption of this Agreement is deemed to be the principal place of business of" Kroll.  (*Id*.)  The Service Agreement also provides that "the estimated charges may not be sufficient to accomplish the Engagement," and that "no additional charges will be incurred without Customer written authorization."  (*Id*.)

Kroll invoiced Miller Canfield on September 29, 2005, in the amount of $33,954.91.  (*Id*. ¶ 14, Ex. I.)  Kroll then invoiced Miller Canfield $190,140.98 on October 28, 2005.  (*Id*. ¶ 14, Ex. J.)  The Defendants returned to the arbitration panel to request the costs of the electronic searches.  On November 11, 2005, the arbitration panel denied the Defendants' request.  (*Id*. ¶ 15, Ex. K.)  The panel's order stated that

> [Defendants] have consistently stated in oral arguments and in writing that they would assume the entire financial responsibility for electronic discovery by Kroll in this matter.  The Panel is quite aware that the costs of this discovery escalated at a rate and by an amount that far exceeded

3

> [Defendants'] expectations.  This was a risk that [Defendants] assumed, whether by choice or by fate.

(*Id.*)  The panel further ordered that Defendants were "given the authority to make direct contact with the billing department of Kroll, regarding any billing discussions." (*Id.*)  The panel stated that "[Defendants] are again reminded that all outstanding invoices are to be paid promptly, in accordance with Kroll policy." (*Id.*)  Kroll subsequently invoiced Miller Canfield $15,734.02 on November 29, 2005, $4,836.13 on December 29, 2005, and $5,084.02 on January 20, 2006.  (*Id.* ¶ 14, Ex. J.)

In September 2006, the Defendants and Kroll engaged in discussions regarding payment of Kroll's bills.  On September 11, 2006, Defendants' counsel stated to the arbitration panel during a hearing that the Defendants "are making efforts to pay their bill and that should not be an issue here" and further that Defendants were working out some details and hoped to have a signed agreement regarding the Kroll bills.  (*Id.* ¶ 18, Ex. Q.)

Defendants and Kroll engaged in written correspondence regarding questions Defendants had about the searches Kroll performed.  On February 15, 2006, Kroll wrote to Defendants' counsel indicating it would not answer his most recent letter because Kroll had not been paid.  (*Id.* ¶ 17, Ex. O.)  Kroll indicated that the total invoiced amount was $249,750.06, but that Kroll had received only $7,043.00; Kroll demanded payment of the balance of $242,707.06, and noted that all invoices except the one billed in January 2006 were past due and that interest was accruing pursuant to the terms of the SOW.  (*Id.*)  Defendants' counsel responded with concerns that Kroll had erred in conducting its searches by misspelling key search terms and noted that the scope of the project had been

altered because some searches were eliminated. (*Id.* ¶ 17, Ex. P.) Defendants' counsel further indicated that the amount invoiced exceeded the amount quoted by Kroll in its estimates and that the Defendants had requested, but had not received, revised cost estimates as the work was performed. (*Id.*) After this exchange, Kroll invoiced Miller Canfield another $1,531.15 on February 27, 2006, and $1,530.93 on March 30, 2006. (*Id.* ¶ 20, at Ex. U.)

In December 2007, after forty-five days of hearings, the arbitration panel issued its arbitration order finding in favor of the Defendants on Dr. Grain's rescission and breach of contract claims. (Doc. No. 11 ¶ 5, Ex. A.) The Defendants were awarded damages and a portion of their legal fees and costs, including a portion of the amount owed to Kroll. (*Id.*) The Defendants have appealed the arbitration award, specifically arguing that the arbitration panel should have awarded Defendants the entire amount of the Kroll bills; this matter is pending before the United States Court of Appeals for the Sixth Circuit. (*Id.* at ¶ 15.)

Trinity paid the amounts due to Defendants pursuant to the arbitration award. In April 2008, Trinity sought and received an order from the court hearing the Michigan action stating that Defendants were required to pay Kroll. (Doc. No. 16 ¶ 26, Ex. Y.) The Defendants paid portions of the amounts owed, but have not paid all amounts Kroll contends are due. According to Kroll, the Defendants have paid the principal amount of Kroll's invoices, but have not paid interest and attorney fees to which Kroll contends it is entitled under the SOW. (*Id.* ¶¶ 27, 29.) Kroll also indicates that the Defendants have announced an intention to claim that they have overpaid Kroll. (*Id.* ¶ 29.)

Kroll filed this suit in state court in Hennepin County, Minnesota, to collect amounts it alleges are due from Defendants. Kroll contends that the Defendants owe it $104,083.27 in interest and late payment charges as well as its attorney fees. The Defendants removed the matter to this Court on the basis of diversity between the parties and now contend that this Court lacks personal jurisdiction over them. Defendants seek dismissal of the case or a transfer of venue to the United States District Court for the Eastern District of Michigan. Kroll argues that jurisdiction exists and urges the Court not to dismiss.

## DISCUSSION

**I.      Personal Jurisdiction**

    **A.      Standard and Requirements for Establishing Personal Jurisdiction**

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, the court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land*

*v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).  For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor.  *Digi-Tel*, 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process.  *Id.* (citing *Northrup King*, 51 F.3d at 1387).  The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied.  *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).  When analyzing most personal jurisdiction questions in Minnesota, courts may simply apply the federal standards.  *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of

its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether the defendants' contacts with the forum state establish personal jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.9, 416, 418–19 (1984)); *Valspar*, 495 N.W.2d at 411. Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *Wessels*, 65 F.3d at 1432 (quoting *Burger King*, 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster: (1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. The first three factors are of primary importance, while the last two are "secondary factors." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995). The third factor

distinguishes between specific and general jurisdiction. *Digi-Tel*, 89 F.3d at 523 n.4 (citing *Wessels*, 65 F.3d at 1432, n.4).

### B. Personal Jurisdiction Over Defendants

#### 1. General Jurisdiction

Defendants contend that this Court lacks general jurisdiction over them. Defendants note that they live and work in Michigan and have never lived or worked in Minnesota. The Defendants have never owned or leased property in Minnesota or had any other assets or accounts here, have never been licensed to practice medicine here, have never had any employees here, and have never solicited business from Minnesota. The Defendants have been in Minnesota only on two or three occasions when they transferred from one plane to another at the Minneapolis/St. Paul International Airport. Kroll does not contest these facts. The Court concludes that it lacks general jurisdiction over Defendants because they do not have "continuous and systematic" contacts with Minnesota so that they would become subject to the jurisdiction of Minnesota's courts for any purpose. *Morris*, 923 F.2d at 1281.

#### 2. Specific Jurisdiction

Defendants also contend this Court lacks specific jurisdiction over them. Defendants argue that all of their activities took place in Michigan. They are parties to the Michigan action and the Michigan arbitration, from which Kroll's involvement with them arose, which cases pertain to the Defendants' contractual relationship with Michigan entities and persons.

Kroll, on the other hand, argues that Defendants purposely directed their activities to Minnesota when they agreed for Miller Canfield to enter into the SOW, essentially acting as the Defendants' agent, and that the SOW contains a Minnesota choice-of-law provision. Kroll indicates that it performed all of the work under the SOW in Minnesota, pursuant to the Defendants' direction as to the search terms and scope of the search. Kroll contends that the Defendants acknowledged that they were responsible for paying Kroll's bills on multiple occasions. Kroll, therefore, contends that the Defendants had minimum contacts with Minnesota in connection with this transaction and could reasonably anticipate being haled into court in Minnesota.

Defendants counter that, though they were ordered to pay for Kroll's services, they did not enter into the contract with Kroll and had no direct contact with Kroll. Defendants challenge Kroll's assertion that Miller Canfield acted as their agent; they argue that Miller Canfield could not have been their agent because the firm was counsel to the opposing party.

The Court concludes that it lacks specific jurisdiction over Defendants. First, entering into a contract with a resident of a forum state does not automatically establish the existence of minimum contacts with that forum. *Iowa Elec. Light & Power Co. v. Atlas Corp.,* 603 F.2d 1301, 1303 (8th Cir. 1979) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a nonresident defendant and the forum state"). Further, the Defendants in this case did not, in fact, enter into the contract with Kroll. The arbitration panel ordered Defendants to pay for Kroll's services, but Trinity and Miller Canfield were ordered to retain Kroll and Miller Canfield actually

signed the SOW and was listed as Kroll's customer. The Defendants were not permitted to have contact with Kroll, and Kroll sent its invoices to Miller Canfield. The party with contacts to Minnesota was Miller Canfield, not the Defendants.

The Court does not agree that Miller Canfield acted as the Defendants' agent with respect to the SOW because the Defendants consented to Miller Canfield's execution of the SOW and Miller Canfield forwarded the invoices to Defendants for payment. Both of these actions were contemplated by the arbitration panel's order, with which the Defendants merely complied. There is no indication in the record that Miller Canfield agreed to enter into an agency relationship with Defendants while still representing an opposing party. Under the facts presented here, the Defendants' consent to the execution of an agreement by a third party with a Minnesota entity does not rise to the level of purposeful availment of the privilege of conducting activities within Minnesota and the invocation of the benefits and protections of Minnesota's laws. *Burger King*, 471 U.S. at 475. The arbitration panel's order and the Defendants' agreement to pay Kroll's invoices, sent to the contracting party, is a step too far removed from purposeful availment to satisfy the minimum contacts analysis.

Second, the Court is unpersuaded that the SOW's choice-of-law provision establishes jurisdiction in this case. The Eighth Circuit has held that a party may consent to personal jurisdiction by entering into a contract containing a forum selection clause. *St. Paul Fire and Marine Ins. Co. v. Courtney Enters., Inc.*, 270 F.3d 621, 624 (8th Cir. 2001). The existence of a choice-of-law provision in a contract does not automatically have the same effect. Such a clause may be evidence that a defendant purposely availed

itself of the privilege of conducting activity in the forum state. *Wessels,* 65 F.3d at 1434 (8th Cir. 1995). A choice-of-law provision, however, cannot alone support personal jurisdiction in the absence of other "deliberate affiliation" with the forum. *Digi-Tel,* 89 F.3d at 523; *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995).

In this case, the choice-of-law provision is insufficient to support a finding of minimum contacts with Minnesota because there are few, if any, other connections between Minnesota and the Defendants. In addition, the SOW's choice-of-law clause was contained in a form attachment. There is no evidence that Defendants negotiated with Kroll regarding the clause, or any other provision of the contract itself,[1] because Defendants were prohibited from contacting Kroll. Here, therefore, the choice-of-law provision does not represent a deliberate affiliation of the Defendants with Minnesota.

Third, the Court concludes that the fact that Kroll conducted the work pursuant to the contract in Minnesota does not necessitate a finding that jurisdiction exists here. Again, the Defendants did not hire Kroll, did not obtain the estimates from Kroll, and did not contract with Kroll. Though the contract provides that the "place of adoption" of the SOW is deemed to be Minnesota, the contract does not specify that Kroll will conduct any particular work in Minnesota. There is no evidence that the Defendants requested or demanded that the work be performed in Minnesota as opposed to anywhere else. Kroll is a national corporation with offices in several states, and could have performed the

---

[1] The Defendants did choose search terms for Kroll to use when conducting the searches pursuant to the SOW. These terms were communicated to Kroll through Miller Canfield.

12

work in other locations. That Kroll performed the searches of the electronic media in Minnesota is, therefore, insufficient in the light of the other facts to create a contact between the Defendants and Minnesota that would support jurisdiction here.

Application of the final two factors does not alter the Court's analysis. Though Minnesota has an interest in providing a forum for dispute resolution to its residents, the connection between this dispute and Minnesota is relatively tenuous. Further, Kroll would find it convenient to litigate here, but the Defendants would not and, thus, this factor does not weigh either way in the Court's decision.

Kroll has failed to make a prima facie case that the Defendants purposefully availed themselves of this forum such that they have sufficient minimum contacts and could reasonably expect to be haled into court in Minnesota. Therefore, this Court lacks personal jurisdiction over the Defendants.

## II.     Dismissal or Transfer of Venue

The Defendants request that this Court transfer venue to the federal district court sitting in the Eastern District of Michigan, where the Michigan action is pending. The Court declines to transfer this case.

Under 28 U.S.C. § 1404(a), this Court may transfer the case "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." Further, 28 U.S.C. § 1406(a) states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The Defendants argue that the Eastern District of Michigan is the appropriate jurisdiction for this suit.  The Defendants note that they have other litigation pending there and that the arbitration through which Kroll was retained occurred in Michigan.  It is true that Michigan represents a more likely forum for this suit than Minnesota.  The Court, however, declines to select an alternative forum for Kroll and instead dismisses the case.

## CONCLUSION

This Court lacks personal jurisdiction over the Defendants and concludes that dismissal, rather than a transfer to an alternative forum, is the appropriate outcome in this case.  Therefore, the Defendants' motion to dismiss or transfer is granted and the case is dismissed.

Accordingly, **IT IS HEREBY ORDERED** that:

1.  The Motion to Dismiss for Lack of Jurisdiction or for Transfer of Defendants Dr. Peter G. Grain and Dr. Annette Barnes (Doc. No. 6) is **GRANTED.**

2.  This matter is **DISMISSED WITHOUT PREJUDICE** in its entirety.


Dated:  October 9, 2008              s/ Donovan W. Frank
                                     DONOVAN W. FRANK
                                     Judge of United States District Court